## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF ILLINOIS

RONALD S. FRANKEL,          )
          )
        Plaintiff,     )
          )
v.          )    Case No. 3:11-cv-00845-MJR-SCW
          )
THE BOEING COMPANY, EMPLOYEE    )
RETIREMENT INCOME PLAN OF    )
MCDONNELL DOUGLAS CORPORATION    )
SALARIED PLAN- SALARIED PLAN, and    )
THE BOEING COMPANY EMPLOYEE    )
BENEFIT PLANS COMMITTEE,    )
          )
        Defendants.     )

## COMPLAINT

COME NOW, Plaintiff, Ronald S. Frankel, and for his Complaint against Defendants, The Boeing Company Employee Benefit Plans Committee, the Employee Retirement Income Plan of McDonnell Douglas Corporation-Salaried Plan, and The Boeing Company, and state as follows:

### The Parties

1.    Plaintiff Ronald S. Frankel ("Frankel") is a citizen of the United States who resides in Torrance, California, served as Director of Consumer Research for McDonnell Douglas Corporation and is a "participant" in the Employee Retirement Income Plan of McDonnell Douglas Corporation Salaried Plan within the meaning of the Employee Retirement Income Security Act ("ERISA") § 3(7), 29 U.S.C. § 1002(7).

2.    Defendant The Boeing Company ("Boeing") is and at all times relevant to this Complaint was a Delaware corporation registered to do business in Illinois and doing business in this judicial District, and is the "Plan Sponsor" of the Defendant the

Employee Retirement Income Plan of McDonnell Douglas Corporation Salaried Plan within the meaning of ERISA § 3(16), 29 U.S.C. § 1002(16).

3.     Defendant the Employee Retirement Income Plan of McDonnell Douglas Corporation-Salaried Plan (the "Plan") is and at all times relevant to this Complaint was a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

4.     Defendant The Boeing Company Employee Benefit Plans Committee (the "Committee") is the "Administrator" of the Plan within the meaning of the Employment Retirement Income Security Act ("ERISA") § 3(16), 29 U.S.C. § 1002(16).

## Jurisdiction and Venue

5.     This is a civil enforcement action brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a).  This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

6.     Venue is proper in this judicial District pursuant to ERISA § 502(e)(2), 29 U.S.C. §1132(e)(2), in that the breach upon which the suit is premised occurred in this judicial District, damages occurred directly to Plaintiff in this judicial District and/or because one or more of the Defendants may be found residing and/or doing business in this judicial District.

## Nature of the Action

7.     In Count I, Plaintiff seeks statutory damages pursuant to ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B), of $110 per day commencing to accumulate on September 1, 2009, for Defendants' failure to provide to him with the Plan documents which he first requested in writing on July 31, 2009, and which he needed to adequately

evaluate, prepare, and present a full and proper administrative claim for additional benefits.

8.      Because Defendants failed to provide Plaintiff with the Plan documents he requested in writing, Plaintiff did not have and still does not have the ability to fully and adequately evaluate his claims for additional benefits.  But, because Defendants believe that Plaintiff has exhausted his administrative remedies and because the contractual statute of limitations expires 180 days after he received Defendants' final denial of his claims for additional benefits on April 6, 2009, Plaintiff brings Counts II-IV to preserve the claims.

9.      In count II, Plaintiff seeks additional benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), in an amount equal to a refund of the full amount of all Social Security "insurance" deductions taken from his monthly pension benefit after taking his pension benefit.

10.     In count III, Plaintiff seeks additional benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), in an amount equal to the difference in his pension benefit as calculated by Defendants and his pension benefit recalculated with proper "benefit service" credit for his MDC service from June 1966 through September 1969.

11.     In count IV, Plaintiff seeks additional benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), in an amount equal to the difference in his pension benefit as calculated by Defendants and his pension benefit recalculated with proper "benefit service" credit for his MDTSC service from July 1995 through June 1997.

## General Allegations of Fact

12.   McDonnell Douglas Corporation ("MDC") established and sponsored the Employee Retirement Income Plan of McDonnell Douglas Corporation Salaried Plan (the "Plan") in 1942, as a traditional final average pay defined benefit pension plan for its employees.

13.   MDC hired Plaintiff, Ronald Frankel, on June 28, 1966, for employment in its Human Factors Research Group.

14.   Plaintiff participated in the Plan.

15.   Plaintiff worked full-time for MDC from June 28, 1966 to September 9, 1966; from June 14, 1967 to September 8, 1967; from June 5, 1968 to August 30, 1968; and from June 4, 1969 to September 5, 1969.

16.   Plaintiff completed his Ph.D. degree in experimental/social psychology in 1975.

17.   After teaching at the University of Wisconsin, Plaintiff commenced working full-time for MDC in the Human Factors Department for MDC on February 12, 1979, and became Director of Consumer Research the next year.

18.   MDC laid off Plaintiff on September 25, 1992.

19.   McDonnell Douglas Technical Services Company ("MDTSC"), a MDC wholly owned subsidiary formed in 1989 to provide professional contract engineering, technical and information technology services to MDC, hired Plaintiff on July 19, 1995.

20.   MDTSC laid off Plaintiff on November 30, 1995.

21.   MDTSC rehired Plaintiff on April 11, 1996.

22.   MDTSC laid off Plaintiff on June 4, 1997.

23.     On October 21, 2008, Defendants sent Plaintiff a written estimate of his pension benefit if he elected to commence the benefit on January 1, 2009.

24.     On November 6, 2008, Plaintiff sent Defendants a certified letter questioning Defendants' computation of his benefit, and specifically questioning Defendants' calculation of his "years of benefit service."

25.     Defendants signed the receipt for the certified letter on November 11, 2008.

26.     Defendants did not respond to the November 6 letter.

27.     Plaintiff elected to commence his benefit under the Single Life Annuity Benefit Option on January 1, 2009, in the amount of $973.36 per month.

28.     Starting with the first payment, Defendants deducted $190.28 from Plaintiff's monthly pension benefit for "insurance."

29.     On February 24, 2009, Plaintiff sent Defendants a certified letter following up his November 6 letter which again questioned Defendant's computation of his benefit, and specifically questioned Defendants' calculation of his "years of benefit service."

30.     Defendants signed the receipt for the certified letter on March 4, 2009.

31.     On April 13, 2009, Defendants provided Plaintiff with the "calculation worksheets" they used to determine his pension benefit.  The April 13 letter did not contain an explanation of how Plaintiff's pension benefit was calculated, and specifically did not show how or explain Defendants calculated Plaintiff's "average monthly salary," "years of benefit service," or estimated Social Security setoff.

32.     On April 21, 2009, Plaintiff sent Defendants a certified letter following up his November 6 and February 24 letters which again questioned Defendant's computation

of his benefit, and specifically questioned Defendants' calculation of his "years of benefit service."

33.   Defendants signed the receipt for the certified letter on April 24, 2009.

34.   On May 14, 2009, Plaintiff sent Defendants another certified letter following up his November 6, February 24, and April 21 letters questioning Defendant's computation of his benefit, and specifically questioning Defendants' calculation of his "years of benefit service."

35.   Defendants signed the receipt for the certified letter on May 18, 2009.

36.   Apparently crossing in the mail, on May 14, 2009, Defendants provided Plaintiff with partial answers to his November 6 questions.

37.   On June 11, 2009, Defendants provided Plaintiff with a slightly revised version of its May 14 letter.

38.   On July 31, 2009, Plaintiff sent Defendants a certified letter requesting in writing "a copy of the Retirement Plan documents that apply to my employment with Douglas Aircraft and with McDonnell Douglas, specifically detailing how retirement benefits are calculated."

39.   Defendants signed the receipt for the certified letter on August 6, 2008.

40.   Defendants have failed to produce the Plan documents requested by Plaintiff in the July 31 letter.

41.   On August 25, 2009, Defendants sent Plaintiff a letter treating his July 31 letter as an administrative claim for additional benefits, acknowledging that his "claim to Boeing Pension Operations was received on August 18, 2009," and promising a "prompt

review" to "expedite" the matter.  Defendants did not provide Plaintiff with the Plan documents he requested on July 31.

42.   On October 29, 2009, Defendants sent Plaintiff a letter specifically responding to Plaintiff's November 6, February 24, April 21, and May 14 letters. Defendant did not provide Plaintiff with the Plan documents he requested on July 31.

43.   In their October 29 letter, Defendants informed Plaintiff that after review they reduced Plaintiff's monthly benefit by nearly $90 to $783.08 per month, and would commence a claw-back of the previously paid "overages."

44.   On December 21, 2009, Plaintiff sent Defendants a certified letter again requesting in writing the Plan document and other "relevant documents that I need to reconcile my possible retirement benefits" including the "Salaried Summary Plan Description" and "any documentation or electronic link to each such plan document that was *printed* during each of the periods of all my employment periods."

45.   Defendants signed the receipt for the certified letter on or about December 27, 2009.

46.   In his December 21 letter, Plaintiff questioned why Defendant had been reducing his monthly benefit by $190.28 for "insurance" since he commenced taking the benefit on January 1, 2009.

47.   On April 29, 2010, Plaintiff sent Defendants a certified letter following up his December 21 letter requesting Plan documents and questioning Defendant's computation of his benefits.

48.   Defendants signed the receipt for the certified letter on May 4, 2010.

49.   On July 28, 2010, Plaintiff sent Defendants another certified letter following up his December 21 and April 29 letters requesting Plan documents and questioning Defendant's computation of his benefits.

50.   Defendants signed the receipt for the certified letter. On or about July 31, 2010.

51.   On October 28, 2010, Plaintiff sent Defendants' Office of General Counsel a certified letter following up his December 21, April 29, and July 28 letters requesting Plan documents and questioning Defendant's computation of his benefit.

52.   Defendants signed the receipt for the certified letter on or about November 15, 2010.

53.   On October 29, 2010, Defendants sent Plaintiff a letter denying his July 31, 2009 "claim."  Defendants did not provide Plaintiff with the Plan documents he requested on July 31 and December 21, 2009, and on April 29, July 28, and October 28, 2010.

54.   On November 19, 2010, Defendants send Plaintiff a letter acknowledging that they received Plaintiff's October 28 letter addressed to the Office of General Counsel.  Defendants did not provide Plaintiff with the Plan documents he requested on July 31 and December 21, 2009, and on April 29, July 28, and October 28, 2010.

55.   On January 11, 2011, Plaintiff sent Defendants a letter questioning the calculation of his benefit and providing additional information and documents to support his claim for additional benefits.

56.   In his January 11 letter, Plaintiff specifically requested in writing that Defendants explain how his benefit was calculated including an explanation of the monthly "insurance" deduction, the subsequent recalculation and reduction in monthly

benefit amount, and the specific salary for each of the specific periods used to determine his benefit.

57.     On April 5, 2011, Defendants sent Plaintiff a letter containing Employee Benefit Plans Committee Memorandum No. 1399, dated March 10, 2011, denying his appeal of the denial of his claims for additional benefits (the "April 5 letter").

58.     Plaintiff received the April 5 letter on April 6, 2011.

59.     In the April 5 letter, Defendants referenced multiple sections of the MDC-S Plan.

60.     In the April 5 letter, Defendants referenced the Summary Plan Description describing the Plan provisions as of January 1, 1993.

61.     In the April 5 letter, Defendants referenced the Summary Plan Description describing the Plan provisions as of December 1, 1996.

62.     In the April 5 letter, Defendants notified Plaintiff that he is "entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to" his appeal of benefits pursuant to 29 CFR S52560.503-1(m)(8).

63.     Ironically, and despite referencing the Plan documents in the April 5 letter to finally deny his claim for additional benefits, at no time did Defendants provide Plaintiff with the Plan documents he requested on July 31 and December 21, 2009, and on April 29, July 28, and October 28, 2010.

64.     Defendants' April 5 letter also notified Plaintiff that he had exhausted his administrative remedies and that he had a right to sue.

## COUNT I

### (Claim For Statutory Damages Under ERISA § 502(c)(1)(B))

65.   Plaintiff incorporates by reference the allegations of paragraphs 1-64 above in this Count.

66.   ERISA imposes a duty of disclosure and reporting on the Plan Administrator to provide participants and their beneficiaries with summary plan descriptions and other plan documents necessary for a participant to determine his right to benefits and relevant to his administrative claim for benefits.  ERISA § 101, 29 U.S.C. § 1021; ERISA § 102, 29 U.S.C. § 1022; ERISA § 104, 29 U.S.C. § 1024; ERISA § 105, 29 U.S.C. § 1025; 29 C.F.R. S2560.503-1(m)(8).

67.   On July 31, 2009, Plaintiff requested in writing "a copy of the Retirement Plan documents that apply to my employment with Douglas Aircraft and with McDonnell Douglas, specifically detailing how retirement benefits are calculated."

68.   Defendants acknowledged receiving the letter on August 6, 2009.

69.   On December 21, 2009, Plaintiff again requested in writing the Plan document and other "relevant documents that I need to reconcile my possible retirement benefits" including the "Salaried Summary Plan Description" and "any documentation or electronic link to each such plan document that was *printed* during each of the periods of all my employment periods."  (Emphasis in original.)

70.   Plaintiff needed the requested Plan documents to determine whether the Plan terms at the time defined his periodic service for MDC from June 28, 1966 to September 5, 1969 in a manner entitling his participation in the Plan.

71.   Plaintiff needed the requested Plan documents to determine whether the Plan terms at the time defined his periodic service for MDTSC from July 19, 1995 to June 4, 1997 in a manner entitling his participation in the Plan.

72.   Plaintiff needed the requested Plan documents to determine how his final benefit is or was calculated and specifically to determine how the Social Security offset applicable to him is or was calculated.

73.   Plaintiff renewed his request for Plan documents on April 29, July 28, and October 28, 2010 by referring back to his previous letters dated July 31 and December 21, 2009.

74.   To date, Defendants have failed to provide Plaintiff with any of the documents he requested on July 31 and December 21, 2009, or re-requested on April 29, July 28, and October 28, 2010.

75.   Plaintiff was not able to adequately evaluate his claim for additional benefits, present his administrative claim for additional benefits, or appeal the Committee's denial of his administrative claim for additional benefits without the Plan documents he requested in writing.

76.   Section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B), provides that "any administrator … who fails or refuses to comply with a request for any information which such administrator is required to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be

personally liable to such participant or beneficiary in an amount up to $110 a day from the date of such failure or refusal, …"

77.   Plaintiff made his first written request for Plan documents necessary for him to determine his right to benefits and which were relevant to his administrative claim for additional benefits on July 28, 2009, and Defendants received it on August 6, 2009.

78.   Pursuant to ERISA § 502(c)(1)(B) Defendants were required to provide the requested Plan documents to Plaintiff by September 5, 2009.

79.   As a result of Defendants' failure to provide the Plan documents Plaintiff requested in writing, Plaintiff was harmed in that he was not able to adequately prepare and present a full and proper administrative claim for benefits.

80.   As a result of Defendants' failure to provide the Plan documents Plaintiff requested in writing, Defendants are liable to Plaintiff for the statutory fine of $110 per day commencing to accumulate on September 1, 2009.

81.   As of the date of the filing of this action, 749 days have passed since Defendants should have produced the requested Plan documents.

82.   As of the date of the filing of this action, Defendants are liable to Plaintiff for and amount in excess of $82,390.00 in statutory fines as determined by the date on which either Defendants finally produce the requested Plan documents to Plaintiff or this Court enters judgment in Plaintiff's favor.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants on the claim for statutory damages asserted in Count I above, pre- and post-judgment interest, attorneys' fees and costs, costs expended by Plaintiff seeking an administrative remedy, and any other relief the Court deems appropriate and just.

## COUNT II

### (Claim For Additional Benefits Under § 502(a)(1)(B))

83.     Plaintiff incorporates by reference the allegations of paragraphs 1-64 above in this Count.

84.     Plaintiff brings this Count pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), to recover benefits due to him under the terms of the Plan, to enforce his right under the terms of the Plan, and/or to clarify his right to future benefits under the terms of the Plan.

85.     On or about January 1, 2009, Defendants determined that Plaintiff's final pension benefit was $973.36 per month.

86.     Upon information and belief, the Plan's terms and conditions in effect at the time Plaintiff terminated employment provided that he accrued a monthly pension benefit at normal retirement age calculated based upon the following formula: (1.65% x "average monthly salary" x "years of benefit service") minus (1.5% x estimated Social Security Benefit x "years of benefit service").

87.     Upon information and belief, the Defendant's reduction for Plaintiff's Social Security benefit was included in the calculation of his accrued benefit of $973.36 per month.

88.     Commencing with the first payment from the Plan, Defendants deducted $190.28 from Plaintiff's monthly pension benefit for "insurance" leaving him with $872.15 in actual monthly pension benefit.

89.     Defendants claim that the "insurance" deduction is an offset for Plaintiff's Social Security benefit.

90.     By reducing Plaintiff's monthly pension benefit with a Social Security offset already accounted for and calculated in his final accrued benefit determination, Defendants are illegally reducing Plaintiff's accrued benefit.

91.     As a result of Defendants' failure to properly calculate his benefit and improper deductions, Plaintiff has lost substantial sums in pension benefits.

92.     Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), Plaintiff is entitled to additional benefits equal to a refund of the full amount of all Social Security "insurance" deductions taken from his monthly pension benefit.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants on the claim for additional benefits asserted in Count II above in an amount equal to the difference between his pension benefit currently calculated by the Plan Administrator and as re-calculated under the terms of the Plan in effect on the date of his termination of service, pre- and post-judgment interest, attorneys' fees and costs, and any other relief the Court deems appropriate and just.

## COUNT III

**(Claim For Additional Benefits Under § 502(a)(1)(B) Based on MDC Service)**

93.     Plaintiff incorporates by reference the allegations of paragraphs 1-64 above in this Count.

94.     Plaintiff worked full-time for MDC from June 28, 1966 to September 9, 1966.

95.     Plaintiff worked full-time for MDC from June 14, 1967 to September 8, 1967.

96.     Plaintiff worked full-time for MDC from June 5, 1968 to August 30, 1968.

97.   Plaintiff worked full-time for MDC from June 4, 1969 to September 5, 1969.

98.   Defendants failed to Credit Plaintiff with "benefit service" credit for his MDC service when it calculated his final pension benefit.

99.   As a result of Defendants' failure to properly calculate his benefit with full "benefit service" credit, Plaintiff has lost substantial sums in pension benefits.

100.   Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to additional benefits equal to the difference in his pension benefit as calculated by Defendant and his pension benefit recalculated with proper "benefit service" credit for his MDC service from June 1966 through September 1969.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants on the claim for additional benefits asserted in Count III above in an amount equal to the difference between his pension benefit currently calculated by the Plan Administrator and as re-calculated under the terms of the Plan in effect on the date of his termination of service applying his MDC service, pre- and post-judgment interest, attorneys' fees and costs, and any other relief the Court deems appropriate and just.

## COUNT IV

### (Claim For Additional Benefits Under § 502(a)(1)(B) Based on MDTSC Service)

101.   Plaintiff incorporates by reference the allegations of paragraphs 1-64 above in this Count.

102.   Plaintiff worked full-time for MDTSC from July 19, 1995 to November 30, 1995.

103.   Plaintiff worked full-time for MDTSC from April 11, 1996 to June 4, 1997.

104. At the time of Plaintiff's service for MDTSC it was a wholly owned subsidiary of MDC controlled by MDC.

105. Defendants failed to credit Plaintiff with "benefit service" credit for his MDTSC service when it calculated his final pension benefit.

106. As a result of Defendants' failure to properly calculate his benefit with full "benefit service" credit, Plaintiff has lost substantial sums in pension benefits.

107. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to additional benefits equal to the difference in his pension benefit as calculated by Defendant and his pension benefit recalculated with proper "benefit service" credit for his MDTSC service from July 1995 through June 1997.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants on the claim for additional benefits asserted in Count IV above in an amount equal to the difference between his pension benefit currently calculated by the Plan Administrator and as re-calculated under the terms of the Plan in effect on the date of his termination of service applying his MDTSC service, pre- and post-judgment interest, attorneys' fees and costs, and any other relief the Court deems appropriate and just.

Dated:  September 20, 2011                    Respectfully submitted,

                                              /s/ Matthew H. Armstrong
                                              Matthew H. Armstrong
                                              **Armstrong Law Firm LLC**
                                              8816 Manchester Road, No. 109
                                              St. Louis MO 63144
                                              (314) 258-0212
                                              matt@mattarmstronglaw.com